UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| WEPLE IP HOLDINGS LLC, | CASE NO. C24-1316JLR |
| Plaintiff, | ORDER |
| v. | |
| META PLATFORMS, INC., | |
| Defendant. | |

## I.    INTRODUCTION

Before the court is Defendant Meta Platforms, Inc.'s ("Meta") motion to dismiss Plaintiff Weple IP Holdings LLC's ("Weple") claims for infringement of three of the six patents at issue in this case.  (Mot. (Dkt. # 38); Reply (Dkt. # 42); *see* Am. Compl. (Dkt. # 31) ¶¶ 11-16 (identifying the asserted patents).)  Weple opposes the motion.  (Resp. (Dkt. # 41).)  The court has considered the parties' submissions, the relevant portions of

//

//

ORDER - 1

1  the record, and the governing law.  Being fully advised,[1] the court GRANTS Meta's

2  motion to dismiss.

3  ## II.    BACKGROUND

4  This matter arises from Meta's alleged infringement of six patents owned by

5  Weple.  (*See generally* Am. Compl.)  The patents bear the title "Mobile Device

6  Streaming Media Application," share a common specification, and stem from a

7  provisional patent application filed on February 12, 2010.  (*See* Am. Compl. ¶¶ 11-16;

8  Resp. at 2, 3.)  Meta's motion to dismiss implicates three of these patents:  (1) U.S. Patent

9  No. 11,966,952 (the "'952 patent" (*see* Am. Compl., Ex. B)); U.S. Patent No. 11,734,730

10 (the "'730 patent" (*see* Am. Compl., Ex. A)); and (3) U.S. Patent No. 12,131,356 (the

11 "'356 patent" (*see* Am. Compl., Ex. E)).  The shared specification describes the invention

12 as "a system and process for coordinating a programmed media stream" of content.  (*See,*

13 *e.g.*, '952 patent at 2:31-37.)  The specification explains:

14  A network-connected server maintains a database containing media-content-
     related data, such as the text of a message, accompanying media, time of
15  airing, payment, and related comments.  A user can view these feeds or
     streams of these consciousness messages by downloading a mobile
16  application or browsing to a website.  The application or website can also be
     used to create, schedule, and pay for media content airtime for a message or
17  program.

18 (*See, e.g.*, *id.* at 2:37-44.)

19  Weple alleges that, at the time of the invention, "existing social media platforms

20 constrained users by offering a limited selection of content creative formats and ways to

21
_____

22  [1] Although both parties requested oral argument, the court concludes that oral argument
    would not assist it in resolving the motion.  *See* Local Rules W.D. Wash. LCR 7(b)(4).

1   deliver content to their audience[.]" (Am. Compl. ¶ 5.)  The platforms "often lacked

2   video tools for content creators, particularly live streaming" and "offered inadequate

3   options for users to manage personal promotion and commercialization of their name,

4   image, and likeness." (*Id.*)  Social media plaforms also lacked e-commerce integration

5   and "advertising opportunities, which could provide substantial revenue streams to

6   content creators and social media platform operators alike." (*Id.*)  According to Weple,

7   the patents-in-suit solve these problems by providing "a comprehensive platform that

8   facilitates the creation, management, distribution, and monetization of diverse content in

9   a mobile environment" and "includes features such as advanced video content

10  capabilities," "embedding of external images and audio to supplement native footage,"

11  "live streaming, along with the ability to notify followers of the initiation thereof," and

12  "multiple media streams with the flexibility to switch between them." (*Id.* ¶ 6.)  Weple

13  asserts that the platform enables user interaction "through commenting, sharing, and

14  bookmarking functionalities" and also "includes a media scheduling feature that allows

15  users to define the time frame for which their content will be accessible." (*Id.*)  Finally,

16  Weple explains that the "solution also introduces an e-commerce component,

17  encompassing in-app transactions, targeted advertising, sponsorship models, as well as

18  mechanisms for gifting and donations." (*Id.*)

19          Weple filed this action in August 2024.  (Compl. (Dkt. # 1).)  In its original

20  complaint, Weple raised claims against Meta for infringement of the '952 and '730

21  patents.  (*Id.* ¶ 10.)  On October 31, 2024, Weple amended its complaint to add claims for

22  infringement of the remaining four patents.  (Am. Compl. ¶ 10.)  Meta filed its motion to

1 dismiss on December 20, 2024.  (Mot.)  Briefing is now complete and the motion is ripe

2 for decision.

## III.    ANALYSIS

Meta asserts that the court must dismiss Weple's claims for infringement of the

'952, '730, and '356 patents because the patents are not directed to eligible subject matter

under 35 U.S.C. § 101.  (*See* Mot. at 1.)  Weple disagrees, and insists that its patents

survive the § 101 inquiry.  (*See generally* Resp.)  Below, the court sets forth the standard

of review and then considers Meta's motion to dismiss.

## A.    Standard of Review

Meta moves to dismiss Weple's claims pursuant to Federal Rule of Civil

Procedure 12(b)(6), which provides for dismissal when a complaint "fail[s] to state a

claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6); *see also* Fed. R. Civ.

P. 8(a)(2) (requiring the plaintiff to provide "a short and plain statement of the claim

showing that the pleader is entitled to relief").  The complaint "must contain sufficient

factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S.

544, 556 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual

content that allows the court to draw the reasonable inference that the defendant is liable

for the misconduct alleged."  *Id.*  When reviewing a complaint, the court "accept[s] all

well-pleaded factual allegations in the complaint as true and construe[s] the pleadings in

the light most favorable to the plaintiff."  *Produce Pay, Inc. v. Izguerra Produce, Inc.*, 39

F.4th 1158, 1161 (9th Cir. 2022) (quoting *Walker v. Fred Meyer, Inc.*, 953 F.3d 1082,

1 | 1086 (9th Cir. 2020)).  The court need not, however, "accept as true allegations that

2 | contradict matters properly subject to judicial notice or by exhibit." *Id.* (quoting

3 | *Gonzalez v. Planned Parenthood of L.A.*, 759 F.3d 1112, 1115 (9th Cir. 2014)).  "[P]atent

4 | eligibility can be determined at the Rule 12(b)(6) stage[,]" but "only when there are no

5 | factual allegations that, taken as true, prevent resolving the eligibility question as a matter

6 | of law."  *Aatrix Software, Inc. v. Green Shades Software, Inc.*, 882 F.3d 1121, 1125 (Fed.

7 | Cir. 2018) (citations omitted).

8 |          Under 35 U.S.C. § 101, "[w]hoever invents or discovers any new and useful

9 | process, machine, manufacture, or composition of matter, or any new and

10 | useful improvement thereof" may obtain a patent for that invention or discovery.  35

11 | U.S.C. § 101.  However, "[l]aws of nature, natural phenomena, and abstract ideas are not

12 | patentable."  *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 573 U.S. 208, 216 (2014) (quoting

13 | *Ass'n for Molecular Pathology v. Myriad Genetics, Inc.*, 569 U.S. 576, 589 (2013)).

14 |          The Supreme Court has established a two-step framework (the "*Alice* test") for

15 | evaluating patent eligibility under § 101.  *Id.* at 217-18.  At step one, the court determines

16 | whether the patent claim at issue is directed to an unpatentable law of nature, natural

17 | phenomena, or abstract idea.  *Id.* at 217.  The court must "evaluate 'the focus of the

18 | claimed advance over the prior art' to determine if the claim's 'character as a whole' is

19 | directed to excluded subject matter."  *PersonalWeb Techs. LLC v. Google LLC*, 8 F.4th

20 | 1310, 1315 (Fed. Cir. 2021) (quoting *Intell. Ventures I LLC v. Erie Indem. Co.*, 850 F.3d

21 | 1315, 1325 (Fed. Cir. 2017) (cleaned up)).  Step one is a "legal question that can be

22 |

1  answered based on the intrinsic evidence[.]" *CardioNet, LLC v. InfoBionic, Inc.*, 955

2  F.3d 1358, 1372 (Fed. Cir. 2020).

3       If the court finds that the claim is directed to excluded subject matter, it proceeds

4  to *Alice* step two, in which it determines whether the claim nevertheless includes an

5  "inventive concept" sufficient to "transform the nature of the claim into a patent-eligible

6  application." *Alice*, 573 U.S. at 217 (citation omitted, cleaned up).  In doing so, the court

7  may look to "the sources properly considered on a motion to dismiss, such as the

8  complaint, the patent, and materials subject to judicial notice." *Aatrix*, 882 F.3d at 1128.

9  A patentee who adequately alleges that the claim contains a inventive concept survives

10 the § 101 eligibility analysis under Rule 12(b)(6).  *Id.* at 1126-27.

11 **B.    Claim Construction**

12       As a threshold matter, the court denies Weple's request to deny or defer Meta's

13 motion to dismiss based on Meta's purported failure to offer proposed constructions for

14 "key terms like 'scheduled airtime,' 'expiration information,' and 'interactive

15 advertisement prompt.'"  (Resp. at 24.)  "A patentee must do more than invoke a generic

16 need for claim construction or discovery to avoid grant of a motion to dismiss under

17 § 101." *Trinity Info Media, LLC v. Covalent, Inc.*, 72 F.4th 1355, 1360 (Fed. Cir. 2023).

18 "Instead, the patentee must propose a specific claim construction or identify specific facts

19 that need development and explain why those circumstances must be resolved before the

20 scope of the claims can be understood for § 101 purposes." *Id.* at 1360-61 (citing

21 *Cleveland Clinic Found. v. True Health Diagnostics LLC*, 859 F.3d 1352, 1360 (Fed. Cir.

22 2017)).  Here, Weple has neither proposed any claim constructions nor identified facts

1    that would change the court's analysis. *See id.* at 1361; (*see generally* Resp.). Therefore

2    the court proceeds to consider whether Weple's patents are directed at eligible subject

3    matter under § 101.

4    **C.    The '952 Patent**

5    Weple alleges that Meta's mobile applications infringe claims 1 and 8 of the '952

6    patent. (Am. Compl. ¶¶ 52-68.) Claim 1 recites:

7    1. A method, comprising:

8    receiving, at one or more servers, a plurality of media messages from one or
        more mobile applications executable on a corresponding one or more
        mobile devices, wherein respective ones of the plurality of media
9        messages are associated with a scheduled airtime that indicates when
        the media message is first available for presentation and expiration
10       information to determine when the media message is no longer
        available for presentation;

11   storing the plurality of media messages on the one or more servers;

12   selecting, for inclusion in a first feed, a first subset of the respective ones of
        the media messages from among the plurality of media messages
13       based on the scheduled airtime and the expiration information of the
        respective ones of the media messages;

14   providing the first feed to a first mobile application executable on a first
        mobile device, the first mobile application configured to present the
15       first feed, wherein presentation of the first feed by the first mobile
        application includes presentation of an advertisement prompt with a
16       media message included in the first feed, wherein interaction with the
        advertisement prompt via the first mobile application causes
17       presentation of a first advertisement;

18   selecting, for inclusion in a second feed, a second subset of the respective
        ones of the media messages from among the plurality of media
19       messages based on the scheduled airtime and the expiration
        information of the respective ones of the media messages; and

20   providing the second feed to a second mobile application executable on a
        second mobile device, the second mobile application configured to
21       present the second feed, the second feed differing from the first feed,
        wherein presentation of the second feed by the second mobile

22

application includes presentation of an advertisement prompt with a media message included in the second feed, wherein interaction with the advertisement prompt via the second mobile application causes presentation of a second advertisement.

('952 patent, cl. 1.)  Claim 8 recites a system:

comprising one or more servers including memory, machine-readable instructions, and one or more processors, the one or more processors configured to execute the machine-readable instructions to perform operations comprising [the method described in claim 1.]

(*Id.*, cl. 8; *see also* Am. Compl., Ex. B1 ('952 patent claim chart) at 8-11 (referring to claim 1).)  As explained below, the court concludes that the challenged claims of the '952 patent are directed to patent-ineligible subject matter.

    1.   Step One

The court begins with *Alice* step one.  The court "must ascertain the basic character of the claimed subject matter without describing the claims at such a high level of abstraction and untethered from the language of the claims that the claims would be virtually guaranteed to be abstract."  *Trinity*, 72 F.4th at 1361 (citations omitted) (cleaned up).  "The Supreme Court has not established a definitive rule to determine what constitutes an 'abstract idea' sufficient to satisfy the first step of the []*Alice* inquiry."  *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1334 (Fed. Cir. 2016) (citing *Alice*, 573 U.S. at 221).  Rather, courts use strategies such as "compar[ing] the claims at issue to those claims already found to be directed to an abstract idea in previous cases[,]" *id.*, considering analogies to the brick-and-mortar world, *see, e.g.*, *Intell. Ventures I LLC v. Symantec Corp.*, 838 F.3d 1307, 1317 (Fed. Cir. 2016), and evaluating whether the claims at issue recite "claims to results rather than to a means of achieving the claimed

1  result," *In re Killian*, 45 F.4th 1373, 1382 (Fed. Cir. 2022).  For software-based

2  inventions, like those at issue here, step one "often turns on whether the claims focus on

3  the specific asserted improvement in computer capabilities or, instead, on a process that

4  qualifies as an abstract idea for which computers are invoked merely as a tool."  *Trinity*,

5  72 F.4th at 1362-63 (quoting *In re Killian*, 45 F.4th at 1382 (cleaned up)); *see also*

6  *Two-Way Media Ltd. v. Comcast Cable Commc'ns, LLC*, 874 F.3d 1329, 1337 (Fed. Cir.

7  2017) ("We look to whether the claims in the patent focus on a specific means or method,

8  or are instead directed to a result or effect that itself is the abstract idea and merely

9  invokes generic processes and machinery.").

10      Here, Meta asserts that claim 1 of the '952 patent is "directed to the abstract idea

11  of providing scheduled media messages associated with information including scheduled

12  airtime, expiration information, and interactive prompts."  (Mot. at 4-5.)  Weple counters

13  that the '952 patent "focuses on systems and methods for managing and presenting media

14  messages within mobile application feeds" (Resp. at 3 (citing Am. Compl. ¶ 22)), and

15  argues that the claims "are directed to specific features that improve the delivery,

16  organization, and interaction with media content through mobile applications" (Resp. at

17  7).  In the court's view, neither of these proposals adequately captures the "character as a

18  whole" of the relevant claims.  *PersonalWeb*, 8 F.4th at 1315.  Instead, the court finds

19  that the relevant claims of the '952 patent are directed to receiving, storing, scheduling,

20  selecting, and presenting media content and advertisements.

21      The court further finds that the claims are directed to an abstract idea.  First, the

22  claims use "result-based functional language" but do not "describe how to achieve these

1   results in a non-abstract way." *Two-Way Media*, 874 F.3d at 1337 (concluding that a

2   claim that required "the functional results of 'converting,' 'routing,' 'controlling,'

3   monitoring,' and 'accumulating records'" but did not explain how to achieve those results

4   was directed to an abstract idea).  Here, the '952 claims require the functional results of

5   "receiving," "storing," "selecting," and "providing" media messages associated with

6   airtimes, expiration times, and advertising across two message feeds, but do not describe

7   how to perform these functions in a way that improves the relevant technology.  (*See*

8   '952 patent, cl. 1, 8.)  Rather, the claims are implemented "using some unspecified,

9   generic computer[s]"—servers and mobile devices—and do not "purport to improve the

10  functioning of the computer itself."  *Alice*, 573 U.S. at 225-26; *see Two-Way Media*, 874

11  F.3d at 1337 (directing courts to consider whether claims "focus on a specific means or

12  method that improves the relevant technology or are instead directed to a result or effect

13  that itself is the abstract idea and merely invoke generic processes and machinery").

14       Second, case law supports the conclusion that the '952 claims are directed to an

15  abstract idea.  The Federal Circuit has held, for example, that selecting and presenting

16  advertisements based on scheduled airtimes is "an abstract, overly broad concept

17  long-practiced in our society." *Intell. Ventures I LLC v. Cap. One Bank (USA)*, 792 F.3d

18  1363, 1370 (Fed. Cir. 2015) (holding that "tailor[ing] advertisements based on the time of

19  day during which the advertisement was viewed" was an abstract idea); *see also*

20  *Customedia Techs., LLC v. Dish Network Corp.*, 951 F.3d 1359, 1363 (Fed. Cir. 2020)

21  (holding claims "merely improve[d] the abstract idea of delivering targeted advertising

22  using a computer only as a tool").  The Federal Circuit has also held that a claim directed

1   to "displaying an advertisement in exchange for access to copyrighted media" "recite[d]

2   an abstraction" when the method described in the claim included "receiving copyrighted

3   media, selecting an ad, offering the media in exchange for watching the selected ad,

4   displaying the ad, allowing the consumer access to the media, and receiving payment

5   from the sponsor of the ad[.]" *Ultramercial, Inc. v. Hulu, LLC*, 772 F.3d 709, 714-15

6   (Fed. Cir. 2014).  Thus, the '952 patent's claims, which focus on receiving, storing,

7   scheduling, selecting, and presenting media content and advertisements, are similar to

8   claims that the Federal Circuit has repeatedly held were directed to abstract ideas.[2]

9        Weple's arguments to the contrary are unavailing.  First, Weple asserts that the

10  claims recite "specific parameters, mechanisms, and structural interactions" that result in

11  improvements over the prior art, such as "scheduled airtime and expiration

12  information[,]" the "ability to generate multiple, distinct feeds using the claimed

13  parameters[,]" and "interactive advertising prompts[.]"  (Resp. at 7-8.)  It further

14  contends that claim 1 "ensures coordinated interaction between servers and mobile

15  applications," resulting in "a cohesive system that combines servers, mobile applications,

16  and scheduling parameters to deliver targeted and timely media content" and "improve[s]

17  prior systems by enabling differentiation of feeds."  (*Id.* at 8.)  The § 101 inquiry,

18  however, must "focus on the language of the [a]sserted [c]laims themselves."  *Synopsys,*

19

20

---

[2] The court agrees with Meta that these functions are similar to those performed by a
media company that selects advertisements to display on each of multiple television channels
based on the scheduled runtime and expiration time associated with the advertisements.  (Resp.
at 5-7.)  Although Weple protests that the analogy is "fundamentally flawed," the specification
invokes the same analogies to explain the background of the patent.  (*See* '952 patent, 1:40-47.)

*Inc. v. Mentor Graphics Corp.*, 839 F.3d 1138, 1149 (Fed. Cir. 2016).  That language

does not specify *how* any of the features of the invention are effectuated or *how* the

claims improve the functionality of the relevant technology.  (*See* '952 patent, cl. 1, 8);

*see Customedia*, 951 F.3d at 1364 (collecting cases requiring that patent-eligible claims

"be directed to an improvement in the functionality of the computer or network platform

itself").  Weple cannot substitute the expansive language in its briefing for the actual

language of the claims.

　　　　Second, Weple asserts that the '952 patent's dependent claims "incorporate a

variety of technical mechanisms that further improve the organization, delivery, and

interaction with media messages" and thus render the subject matter patentable.  (Resp. at

9-10 (citing '952 patent, cl. 2-6, 9-13, 16-20).)  The court disagrees.  Like the

independent claims, the dependent claims use results-oriented functional language and do

not explain *how* the method or system achieves those results.  For example, claim 2,

which Weple describes as "encoded links for enhanced accessibility" (*id.* at 9), recites

"[t]he method of claim 1, wherein the media message included in the first feed is encoded

with a link that enables access to a webpage."  ('952 patent, cl. 2; *see also id.*, cl. 9, 16

(including similar language).)  *How* the system accomplishes the encoding of the link is

not addressed.  Similarly, claim 6, which Weple characterizes as "customizable video

messages" (Resp. at 10), recites "[t]he method of claim 1, wherein the media message

included in the feed is a video that includes one or more of an attached image or attached

audio that is not native to the video."  ('952 patent, cl. 6; *see also id.*, cl. 13, 20 (including

similar language).)  Again, *how* the system includes a video message in a feed and *how* it

1    includes images or audio in a video is never explained.  The same is true for the

2    dependent claims addressing "sharing prompts," "bookmark prompts," and "item

3    purchase prompts."  (*See* '952 patent, cl. 2-6, 9-13, 16-20.)  The court finds no language

4    in the dependent claims that alters its conclusion that the '952 patent's independent

5    claims are directed to an abstract idea.  *See Miller Mendel, Inc. v. City of Anna*, 107 F.4th

6    1345, 1353 (Fed. Cir. 2024) (holding limitations such as "transmitting hyperlinks via

7    email" and "generating a suggested reference" did not change the court's conclusion that

8    the claims were directed to an abstract idea).

9        Having determined that the relevant claims are directed to an abstract idea, the

10    court turns to the second step of the *Alice* test.

11        2.    Step Two

12        At *Alice* step 2, the court must "consider the elements of each claim both

13    individually and as an ordered combination to determine whether the additional elements

14    transform the nature of the claim into a patent-eligible application."  *Alice*, 573 U.S. at

15    217 (citation omitted, cleaned up).  Having reviewed the '952 patent, the court finds no

16    "inventive concept" that transforms the abstract idea of receiving, storing, scheduling,

17    selecting, and presenting media content into patentable subject matter.  *Id*.

18        The Federal Circuit has made it clear that "merely reciting an abstract idea

19    performed on a set of generic computer components" is not enough to establish an

20    inventive concept.  *Two-Way Media*, 874 F.3d at 1339.  Here, the steps recited in the

21    relevant claims are achieved using generic components including "servers," "mobile

22    applications," and "mobile devices."  (*See, e.g.*, '952 patent, cl. 1; *see also id.* at 3:50-62

1  (specification, describing "an example media coordination system" consisting of

2  "network connected devices," a computer server, a "wide area network such as the

3  internet or wireless cell phone data network," and mobile devices).)  The media messages

4  discussed in the claims can be of any "common media format" and the advertisements are

5  displayed "from a downloaded source, such as from Google AdSense or Apple in-app

6  advertising."  (*Id.* at 4:20-26, 5:16-19.)  The use of "generic computer components . . .

7  confirms that these components do not provide an inventive concept" that transforms the

8  abstract idea into patentable subject matter.  *Miller Mendel*, 107 F.4th at 1354 (discussing

9  patent's use of a "computing device," "processors," "system memory," and "computer

10 storage media"); *see also Cap. One Bank*, 792 F.3d at 1368 (finding no inventive concept

11 where the "recited elements, e.g., a database, a user profile . . . , and a communication

12 medium, are all generic computer elements"); *Hawk Tech. Sys., LLC v. Castle Retail,*

13 *LLC*, 60 F.4th 1349, 1358-59 (Fed. Cir. 2023) ("Simply stated, nothing in the claims,

14 understood in light of the specification, requires anything other than off-the-shelf,

15 conventional computer, network, and display technology for gathering, sending, and

16 presenting the desired information." (citation omitted, cleaned up)).  Accordingly, the

17 court concludes that the relevant claims of the '952 patent do not recite an inventive

18 concept.

19      Weple argues that the '952 claims survive step two based on the allegations in its

20 amended complaint.  (Resp. at 12 (citing Am. Compl. ¶¶ 5-6, 23-24).)  The court may

21 consider the complaint when determining whether the claims contain an inventive

22 concept.  *See Aatrix*, 882 F.3d at 1128.  In *Aatrix Software, Inc. v. Green Shades*

*Software, Inc.*, for example, the Federal Circuit reversed a district court's denial of leave

to amend where the patentee's proposed amended complaint alleged that the invention

"saved storage space both in the users' computers' RAM . . . and hard disk[,]" "reduced

the risk of 'thrashing[,]'" used less memory, and resulted in faster processing speed. 882

F.3d at 1127. The court reasoned that these allegations "suggest[ed] that the claimed

invention is directed to an improvement in the computer technology itself and not

directed to generic components performing conventional activities." *Id.* Here, by

contrast, Weple alleges:

> 23. Before the inventions of the '952 patent . . . , social media
> platforms delivered user content through media feeds, with some allowing
> content uploads via mobile applications, but offered users limited control
> over the airing and distribution of their content. For example, they lacked
> the functionality for users to determine the availability of their media
> messages placed in feeds based on scheduled airtimes and expiration
> information associated with the media messages.
>
> 24. The '952 patent . . . disclose[s] innovative systems and
> methods that address the limitations of the prior art through dynamic curation
> and selection of in-feed media messages, specifically advertising media
> messages, based on associated scheduled airtimes and expiration times.
> These systems and methods afford users control over when their media
> messages are available for distribution on the social media platform, an
> option not previously available to users of mobile applications. Media
> messages can be coordinated into multiple feeds that are then provided to
> multiple other users of the mobile applications or multiple feeds within the
> same mobile application. The inventive concepts of the '952 patent allow
> for strategic timing of media message releases, aligning them with optimal
> audience engagement times, which provides content management based on
> relevance and timeliness, thus enhancing the effectiveness and reach of social
> media campaigns and promotional efforts.

(Am. Compl. ¶¶ 23-24 (footnote omitted).) These allegations are conclusory and fail to

address with specificity any "improvement in the computer technology itself." *Aatrix*,

1    882 F.3d at 1127; *see Simio, LLC v. FlexSim Software Prods., Inc.*, 983 F.3d 1353, 1365

2    (Fed. Cir. 2020) ("A statement that a feature 'improves the functioning and operations of

3    the computer' is, by itself, conclusory."); *Plotagraph, Inc. v. Lightricks, Ltd.*, No.

4    2023-1048, 2024 WL 223185, at *4 (Fed. Cir. Jan. 22, 2024) (holding that parameters

5    "specified at a high level of generality" were "not enough to supply an inventive concept"

6    and disregarding conclusory allegations of inventiveness).  Thus, Weple's amended

7    complaint does not plausibly allege an inventive concept as required by *Alice* step 2.

8        Furthermore, the court agrees with Meta that "none of the dependent claims add

9    anything of patentable significance."  (Mot. at 12.)  Rather, as discussed above, the

10   dependent claims assert additional features such as web links, sharing prompts, bookmark

11   prompts, and purchase prompts without explaining *how* these features are implemented or

12   *how* they improve the computer technology, and Weple's amended complaint contains no

13   "plausible and specific factual allegations" regarding the inventiveness of the dependent

14   claims that would save the claims from dismissal.  *Cellspin Soft, Inc. v. Fitbit, Inc.*, 927

15   F.3d 1306, 1317 (Fed. Cir. 2019).  Accordingly, the court concludes that the relevant

16   claims of the '952 patent are directed to non-patentable subject matter and dismisses

17   Weple's claim for infringement of the '952 patent.

18   **D.    The '356 Patent**

19       Weple alleges that Meta's mobile applications infringe claims 1 and 9 and

20   dependent claims 16 and 24 of the '356 patent.  (Am. Compl. ¶¶ 102-17; *see id.*, Ex. E1

21   ('356 patent claim chart).)  Claim 1 recites:

22

1. A method, comprising:

receiving, at one or more servers, a plurality of media messages from one or more mobile applications executable on a corresponding one or more mobile devices;

storing the plurality of media messages on the one or more servers, wherein one or more stored media messages are associated with expiration information to determine when the one or more stored media messages can no longer be provided in a feed;

selecting, for inclusion in respective ones of a first feed, a second feed, and a third feed, corresponding ones of a first subset, a second subset, and a third subset of media messages from among the plurality of media messages stored on the one or more servers, wherein the respective selections of the first subset, the second subset, and the third subset of media messages are based at least in part on the expiration information, wherein the first feed, the second feed, and the third feed differ from one another;

providing the first feed from the one or more servers to a first mobile application executable on a first mobile device, the first mobile application configured to present the first feed;

providing the second feed from the one or more servers to the first mobile application, the first mobile application configured to present the second feed, wherein the first mobile application is further configured to switch a presentation of the first feed to a presentation of the second feed in response to a user interaction with the first mobile application; and

providing the third feed from the one or more servers to a second mobile application executable on a second mobile device, the second mobile application configured to present the third feed.

('356 patent, cl. 1.) Claim 9 of the '356 patent adds to claim 1 the feature of

generating a plurality of media messages at one or more mobile applications executable on a corresponding one or more mobile devices, wherein respective ones of the plurality of media messages include an image or video captured by the one or more mobile applications via a corresponding one or more cameras of the corresponding one or more mobile devices[.]

(*Compare id.*, cl. 9, *with id.*, cl. 1.)  Claims 16 and 24 recite systems for performing the methods described in claims 1 and 9.  (*See id.*, cl. 16, 24.)  The court concludes that the '356 patent suffers from the same infirmities as the '952 patent and, as a result, is directed to patent-ineligible subject matter.

     1.    Step One

     At *Alice* step one, Meta argues that the '356 claims "are directed to the abstract idea of providing media messages in three feeds based on information including expiration information."  (Mot. at 14.)  Weple asserts that the claims of the '356 patent "are directed to the integration of user-generated, time-sensitive media messages across multiple applications and feed structures to ensure timely and relevant content delivery."  (Resp. at 4 (citing Am. Compl. ¶ 26).)  Again, the parties' proposals do not capture the "character as a whole" of the relevant claims of the '356 patent.  *PersonalWeb*, 8 F.4th at 1315.  Instead, the court finds that the claims are directed to generating, receiving, storing, selecting, and distributing media content.

     Like the '952 claims, the '356 claims use "result-based functional language" but do not "describe how to achieve these results in a non-abstract way."  *Two-Way Media*, 874 F.3d at 1337.  The claims require the functional results of "generating," "receiving," "storing," and "selecting" media messages which are then included in feeds and "provid[ed]" to mobile applications.  (*See* '356 patent, cl. 1, 9.)  The claims do not, however, describe *how* to perform these functions in a way that improves computer technology.  (*See id.*); *Two-Way Media*, 874 F.3d at 1337.  Instead, the claims are again implemented "using some unspecified, generic computer" and do not "purport to improve

the functioning of the computer itself."  *Alice*, 573 U.S. at 225-26.  The dependent claims

of the '356 patent also use results-oriented language and do not explain *how* to achieve

those results.  (*See* '356 patent, cl. 2-8, 10-30.)  As a result, the court concludes the

claims are directed to an abstract idea under *Alice* step one.

2.    Step Two

The court concludes at step two that Weple has failed to demonstrate an inventive

concept that renders the claims patentable.  First, like the '952 claims, the '356 claims

"merely recit[e] an abstract idea performed on a set of generic computer components,"

which is insufficient to establish an inventive concept.  *Two-Way Media*, 874 F.3d at

1339; ('356 patent, cl. 1 (disclosing generic components such as servers, mobile

applications, and mobile devices); *id.* at 3:50-62 (specification).)  And again, Weple's

amended complaint does not transform the abstract idea into patentable subject matter.

Weple alleges:

> 25.    The . . . '356 patent disclose[s] improved systems and methods
> to manage the distribution of time-limited media messages across multiple
> social media feeds within one or more mobile applications, providing users
> access to media messages within switchable feeds and allowing advertisers
> extended reach and engagement across mobile applications.

> 26.    . . . .  The '356 patent advances the scope of distribution by
> extending it across mobile applications.  The '356 patent discloses platform
> configurations such that media messages with expiration limits appear in at
> least two switchable feeds within a single application and also in at least a
> third feed on a different mobile application.  The inventions of the '356 patent
> allow delivery of limited-duration content across a broader mobile
> application ecosystem in ways single-feed or static placements could not
> achieve.

1   (Am. Compl. ¶¶ 25-26.)  Again, the allegations are conclusory and do not explain with

2   specificity any "improvement in the computer technology itself."  *Aatrix*, 882 F.3d at

3   1127.  Therefore, the court concludes that the '356 patent claims do not establish an

4   inventive concept that would render the abstract idea patentable.  The court grants Meta's

5   motion to dismiss Weple's claim for infringement of the '356 patent.

6   **E.    The '730 Patent**

7       Finally, Weple alleges that Meta has infringed claim 1 of the '730 patent.  (Am.

8   Compl. ¶¶ 40-51; *see id.*, Ex. A1 ('730 patent claim chart).)  Claim 1 recites:

9       1.  A method of coordinating video messages, the method comprising:

10      providing one or more mobile applications for both viewing and creating
            video messages;

11      receiving a plurality of video messages from the one or more mobile
            applications, wherein the plurality of video messages includes text
12          and audio to be simultaneously presented;

13      storing the plurality of video messages in a database;

        sending to a first one of the mobile applications the plurality of video
14          messages, wherein the first one of the mobile applications
            simultaneously presents the text and the audio with each one of the
15          video messages and provides a comment prompt that, when selected,
            allows a comment to be added by the first one of the mobile
16          applications to a corresponding one of the video messages when
            presented;

17      receiving a notification that a second one of the mobile applications has
            started a live stream video message; and

18      streaming the live stream video message to the first one of the mobile
            applications upon receiving a request from the first one of the mobile
19          applications to receive the live stream video message.

20  ('730 patent, cl. 1.)  The court concludes that the relevant claims of the '730 patent suffer

21  from the same deficiencies that doomed the '952 and '356 patent claims.

22

ORDER - 20

1          1.      Step One

2          Weple alleges that the '730 patent "is directed to improved methods of

3   coordinating video message delivery to mobile applications[.]" (Am. Compl. ¶ 18.)  In

4   its briefing, however, Weple asserts that the '730 patent "introduces specific processes

5   and structural configurations that provide technological improvements to distributed

6   media networks, particularly in the context of video messaging systems integrated with

7   mobile applications." (*See* Resp. at 19.)  Meta, meanwhile, argues that the '730 patent is

8   directed to the abstract idea of "coordinating video messages with comments and live

9   streaming." (Mot. at 18.)  The court finds that claim 1 is directed at the abstract idea of

10  coordinating the creation, distribution, and delivery of video messages.

11         Like the '952 and '356 patent claims, claim 1 of the '730 patent uses result-based

12  functional language and does not explain how to achieve those results in a way that

13  improves the technology.  *See Two-Way Media*, 874 F.3d at 1337.  The claim refers only

14  to generic technology such as mobile applications and a database and says nothing about

15  *how* each of the functions is accomplished at a technical level.  *See Alice*, 573 U.S. at

16  225-26.  The dependent claims also use results-oriented language and do not address any

17  "specific asserted improvement[s] in computer capabilities." *Trinity*, 72 F.4th at

18  1362-63; (*see* '730 patent, cl. 2-9).  As a result, the court concludes that the claims of the

19  '730 patent are directed to an abstract idea under *Alice* step one.

20         2.      Step 2

21         At Step 2, Weple fails to demonstrate an inventive concept that renders the

22  relevant claims patentable.  First, the '730 claims again "merely recit[e] an abstract idea

ORDER - 21

1    performed on a set of generic computer components," which does not establish an

2    inventive concept. *Two-Way Media*, 874 F.3d at 1339; (*see* '730 patent, cl. 1 (disclosing

3    generic components such mobile applications and a database); *id.* at 3:50-62

4    (specification).)  Furthermore, the allegations in Weple's amended complaint do not

5    transform the abstract idea into patent-eligible subject matter.  Weple alleges:

> 20.    Before the inventions of the '730 patent, the video creation
> capabilities available through social media platforms were limited.  The
> associated video messaging systems for such platforms predominantly
> functioned through desktop applications, with separate applications needed
> for creating and viewing content.  Video messaging systems often lacked the
> ynchronous display of text and audio within the video messages and
> interactive capabilities like commenting directly within the video player, thus
> limiting user engagement.  Further, live streaming and video messaging were
> typically isolated from one another, thereby failing to provide an integrated
> user experience.

> 21.    The '730 patent describes and claims a technological
> advancement over prior art video messaging methods.  The methods of the
> '730 patent provide a seamless integration within mobile applications for
> both creating and viewing video messages, also allowing for attached text
> and audio to be simultaneously presented within video messages, creating a
> more engaging multimedia experience.  The methods also provide
> commenting capabilities for specific video messages, further allowing
> audience engagement.  In addition, the methods integrate live streaming
> capabilities with video messaging within the same mobile application and
> include a notification system to alert users of available live streams within
> the video messaging application, ensuring users are promptly informed and
> able to join live sessions.  The seamless transition between recorded video
> messages and live streams within the same application was a significant
> improvement in user experience over the prior art.

19    (Am. Compl. ¶¶ 20-21.)  These allegations, like Weple's allegations regarding the '952

20    and '356 patents, are conclusory and disconnected from the language of the claims

21    themselves.  Accordingly, the court need not take them as true. *Aatrix*, 882 F.3d at 1125.

22    The court concludes that the relevant claims of the '730 patent are directed at ineligible

1  subject matter and grants Meta's motion to dismiss Weple's claim for infringement of the

2  '730 patent.

3              **IV.    CONCLUSION**

4          For the foregoing reasons, the court GRANTS Meta's motion to dismiss (Dkt.

5  # 38).  Weple's claims for infringement of the '952, '356, and '730 patents are

6  DISMISSED with prejudice.

7          Dated this 24th day of April, 2025.

8

9                              _____

10                             JAMES L. ROBART
                               United States District Judge

11

12

13

14

15

16

17

18

19

20

21

22

ORDER - 23