1

2

3

4

5

6

7

8

9

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

10   WEPLE IP HOLDINGS LLC,                    CASE NO. C24-1316JLR

11                          Plaintiff,          ORDER

12        v.

13   META PLATFORMS, INC.,

14                          Defendant.

## I.    INTRODUCTION

Before the court are (1) Defendant Meta Platforms, Inc.'s ("Meta") motion for

judgment on the pleadings (MJP (Dkt. # 56); MJP Reply (Dkt. # 63)) and (2) Plaintiff

Weple IP Holdings LLC's ("Weple") motion for leave to file a second amended

complaint (MTA (Dkt. # 60); MTA Reply (Dkt. # 65)).  Each party opposes the other

party's motion.  (MJP Resp. (Dkt. # 61); MTA Resp. (Dkt. # 64).)  The court has

considered the parties' submissions, the relevant portions of the record, and the governing

1    law.  Being fully advised,[1] the court GRANTS Meta's motion for judgment on the

2    pleadings and DENIES Weple's motion for leave to file a second amended complaint.

3    ## I.    BACKGROUND[2]

4        This matter arises from Meta's alleged infringement of six patents owned by

5    Weple.  (*See generally* Am. Compl. (Dkt. # 31).)  All six patents bear the title "Mobile

6    Device Streaming Media Application," share a common specification, and stem from a

7    provisional patent application filed on February 12, 2010.  (*See id.* ¶¶ 11-16.)  In general,

8    Weple's patents describe "a system and process for coordinating a programmed media

9    stream" of content "[p]referably . . . relat[ing] to consciousness messages such as prayers,

10   requests for charity, thoughts, or similar messages[,]" or, in the alternative, "breaking

11   news, music videos, comedy, or similar content."  (*See, e.g.*, *id.*, Ex. D (U.S. Patent No.

12   12,118,591 (the "'591 patent")) at 2:31-37.)  As the shared specification explains,

> A  network-connected  server  maintains  a  database  containing  media
> content-related data, such as the text of a message, accompanying media,
> time of airing, payment, and related comments.  A user can view these feeds
> or streams of these streams by downloading a mobile application or browsing
> to a website.  The application or website can also be used to create, schedule,
> and pay for media content airtime for a message or program.

16   (*See, e.g.*, '591 patent at 2:37-44; *see also id.*, Figs. 1-14; *id.* at 2:53-3:16 (describing the

17   figures).)  Weple alleges that these patents comprise "a comprehensive platform that

18   facilitates the creation, management, distribution, and monetization of diverse content in

---

[1] Both parties requested oral argument, but the court concludes that oral argument would not assist it in resolving the motion.  *See* Local Rules W.D. Wash. LCR 7(b)(4).

[2] The court assumes that the reader is familiar with its April 24, 2025 order granting Meta's motion to dismiss Weple's claims relating to three of its six patents.  (*See* 4/24/25 Order (Dkt. # 47).)

1   a mobile environment" and offers features such as "advanced video content capabilities,"

2   live streaming with multiple media streams, "facilitat[ing] real-time audience

3   engagement[,]" media scheduling, and e-commerce capabilities.  (Am. Compl. ¶ 6.)

4          Weple filed this case in August 2024.  (Compl. (Dkt. # 1).)  In its original

5   complaint, Weple raised claims against Meta for infringement of two patents:  (1) U.S.

6   Patent No. 11,734,730 (the "'730 patent" (Am. Compl., Ex. A)), and (2) U.S. Patent No.

7   11,966,952 (the "'952 patent" (Am. Compl., Ex. B)).  (Compl. ¶¶ 10-12.)  On October

8   31, 2024, Weple amended its complaint to add claims for infringement of four additional

9   patents:  (1) U.S. Patent No. 12,112,357 (the "'2,357 patent" (Am. Compl., Ex. C),

10  (2) the '591 patent, (3) U.S. Patent No. 12,131,356 (the "'356 patent" (Am. Compl., Ex.

11  E)), and (4) U.S. Patent No. 12,131,357 (the "'1,357 patent" (Am. Compl., Ex. F)).  (Am.

12  Compl. ¶¶ 10-16.)

13         On December 20, 2024, Meta moved to dismiss Weple's claims for infringement

14  of the '952, '730, and '356 patents.  (MTD (Dkt. # 38).)  On April 24, 2025, the court

15  concluded that these patents were directed to ineligible subject matter under 35 U.S.C.

16  § 101 and *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 573 U.S. 208, 216 (2014); granted

17  Meta's motion to dismiss; and dismissed Weple's claims for infringement of the three

18  patents with prejudice.  (*See generally* 4/24/25 Order (Dkt. # 47).)  For each patent, the

19  court applied the Supreme Court's two-step framework for evaluating patent eligibility

20  (the "*Alice* test"); determined at *Alice* step one that the allegedly infringed claims were

21  directed toward abstract ideas; and concluded at *Alice* step two that the claims did not

22

ORDER - 3

1  include an inventive concept sufficient to transform the abstract ideas into patentable

2  subject matter.  (*See generally id.* (citing *Alice*, 573 U.S. at 217-18).)

3      On June 30, 2025, Meta answered Weple's amended complaint and moved for

4  judgment on the pleadings on Weple's claims for infringement of the remaining three

5  patents.  (Answer (Dkt. # 55); MJP.)  Weple moved for leave to file a second amended

6  complaint on July 22, 2025.  (MTA; *see* Prop. 2d Am. Compl. (Dkt. ## 60-2 (clean), 60-3

7  (redlined)).)  Both motions are now fully briefed and ready for decision.

8              **III.    ANALYSIS**

9      Below, the court first addresses Meta's motion for judgment on the pleadings

10  based on the operative first amended complaint.  Then, the court considers Weple's

11  motion to file a second amended complaint.

12  **A.    Motion for Judgment on the Pleadings**

13      1.    Standard of Review

14      Courts commonly resolve the issue of patent ineligibility on a Federal Rule of

15  Civil Procedure 12(c) motion for judgment on the pleadings.  *See, e.g.*, *PersonalWeb*

16  *Techs. LLC v. Google LLC*, 8 F.4th 1310, 1314-19 (Fed. Cir. 2021) (affirming finding of

17  § 101 invalidity under Rule 12(c)); *Int'l Bus. Machs. Corp. v. Zillow Grp.*, 50 F.4th 1371,

18  1376-83 (Fed. Cir. 2022) (same).  "The standard for deciding a Rule 12(c) motion is the

19  same as a Rule 12(b)(6) motion to dismiss."  *SAP Am. v. InvestPic Inc.*, 898 F.3d 1161,

20  1166 (Fed. Cir. 2018) (citation omitted); *see also Chavez v. United States*, 683 F.3d 1102,

21  1108 (9th Cir. 2012) (noting that the analysis under Rule 12(b)(6) and Rule 12(c) is

22

1  "substantially identical").[3]  Thus, "a motion for judgment on the pleadings is properly

2  granted only when, taking all the allegations in the pleadings as true, the moving party is

3  entitled to judgment as a matter of law." *Herrera v. Zumiez, Inc.*, 953 F.3d 1063, 1068

4  (9th Cir. 2020) (internal quotation marks and citation omitted); *see also Aatrix Software,*

5  *Inc. v. Green Shades Software, Inc.*, 882 F.3d 1121, 1125 (Fed. Cir. 2018) (holding a

6  patent may be deemed ineligible on a motion to dismiss "when there are no factual

7  allegations that, taken as true, prevent resolving the eligibility question as a matter of

8  law") (citations omitted).  The court need not, however, accept as true "conclusory

9  allegations of inventiveness" that are "'wholly divorced from the claims or the

10  specification[.]'" *Int'l Bus. Machs.*, 50 F.4th at 1379 (quoting *Cellspin Soft, Inc. v. Fitbit,*

11  *Inc.*, 927 F.3d 1306, 1317 (Fed. Cir. 2019)); *see also Secured Mail Sols. LLC v.*

12  *Universal Wilde, Inc.*, 873 F.3d 905, 913 (Fed. Cir. 2017) ("[A] court need not accept as

13  true allegations that contradict matters properly subject to judicial notice or by exhibit,

14  such as the [patent] claims and the patent specification." (quotation omitted)).  Only

15  "plausible and specific factual allegations that aspects of the claims are inventive are

16  sufficient" to defeat a motion for judgment on the pleadings.  *Int'l Bus. Machs.*, 50 F.4th

17  at 1379  (quoting *Cellspin*, 927 F.3d at 1317).

18       When evaluating patent eligibility under 35 U.S.C. § 101, the court applies the

19  two-step *Alice* test.  *Alice*, 573 U.S. at 217-18.  At step one, the court determines whether

20

21       [3] The Federal Circuit Court of Appeals "review[s] decisions on motions to dismiss and

22  motions for leave to amend according to applicable regional circuit law."  *Mobile Acuity Ltd. v.*
   *Blippar Ltd.*, 110 F.4th 1280, 1288 (Fed. Cir. 2024) (citation omitted).

the patent claim at issue is directed to an unpatentable law of nature, natural phenomena, or abstract idea. *Alice*, 573 U.S. at 217. The court must "evaluate 'the focus of the claimed advance over the prior art' to determine if the claim's 'character as a whole' is directed to excluded subject matter." *PersonalWeb Techs.*, 8 F.4th at 1315 (quoting *Intell. Ventures I LLC v. Erie Indem. Co.*, 850 F.3d 1315, 1325 (Fed. Cir. 2017) (cleaned up)). In doing so, the court "must ascertain the basic character of the claimed subject matter without describing the claims at such a high level of abstraction and untethered from the language of the claims that the claims would be virtually guaranteed to be abstract." *Trinity Info Media, LLC v. Covalent, Inc.*, 72 F.4th 1355, 1361 (Fed. Cir. 2023) (citations omitted) (cleaned up). The step one inquiry focuses on the language of the claim, read in light of the specification. *See TecSec, Inc. v. Adobe Inc.*, 978 F.3d 1278, 1292 (Fed. Cir. 2020).

"The Supreme Court has not established a definitive rule to determine what constitutes an 'abstract idea' sufficient to satisfy the first step of the []*Alice* inquiry." *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1334 (Fed. Cir. 2016) (citing *Alice*, 573 U.S. at 221). Rather, courts use strategies such as "compar[ing] [the] claims at issue to those claims already found to be directed to an abstract idea in previous cases[,]" *id.*; considering analogies to the brick-and-mortar world, *see, e.g.*, *Intell. Ventures I LLC v. Symantec Corp.*, 838 F.3d 1307, 1317 (Fed. Cir. 2016); and evaluating whether the claims recite "claims to results rather than to a means of achieving the claimed result," *In re Killian*, 45 F.4th 1373, 1382 (Fed. Cir. 2022). For software-based inventions, like those at issue here, step one "often turns on whether the claims focus on the specific

1    asserted improvement in computer capabilities or, instead, on a process that qualifies as

2    an abstract idea for which computers are invoked merely as a tool." *Trinity*, 72 F.4th at

3    1362-63 (quoting *In re Killian*, 45 F.4th at 1382 (cleaned up)); *see also Two-Way Media

4    Ltd. v. Comcast Cable Commc'ns, LLC*, 874 F.3d 1329, 1337 (Fed. Cir. 2017) ("We look

5    to whether the claims in the patent focus on a specific means or method, or are instead

6    directed to a result or effect that itself is the abstract idea and merely invokes generic

7    processes and machinery.").

8        If the court finds at step one that the claim is directed to an abstract idea, it

9    proceeds to *Alice* step two, in which it determines whether the claim nevertheless

10   contains an "inventive concept" sufficient to "transform the nature of the claim into a

11   patent-eligible application." *Alice*, 573 U.S. at 217 (citation omitted, cleaned up).  The

12   court must consider "the elements of the claim, both individually and as an ordered

13   combination, to assess whether the additional elements transform the nature of the claim

14   into a patent-eligible application of the abstract idea." *Two-Way Media*, 874 F.3d at

15   1338.  "[T]o save a patent at step two, an inventive concept must be evident in the

16   claims." *Id.* (citation omitted); *see also Beteiro, LLC v. DraftKings Inc.*, 104 F.4th 1350,

17   1359 (Fed. Cir. 2024) (affirming dismissal where inventiveness allegations were "neither

18   specifically tied to the claimed invention nor . . . plausible (in light of the specification's

19   description of generic technology)").  Deciding whether claims recite an "inventive

20   concept," or something more than "well-understood, routine, conventional activities

21   previously known to the industry," *Alice*, 573 U.S. at 225 (internal brackets omitted), is a

22   question of law that may turn on underlying questions of fact, *Aatrix*, 882 F.3d at 1128.

1

## 2.    Scope of Review

As a threshold matter, the court clarifies the scope of its review of Meta's motion for judgment on the pleadings.  Meta argues that the court must grant its motion and dismiss Weple's claims for infringement of its remaining three patents because these patents, like those the court invalidated in its April 24, 2025 order, do not satisfy the *Alice* test.  (*See generally* MJOP.)  In response, Weple barely mentions its operative first amended complaint.  (*See generally* MJOP Resp.)  Instead, Weple focuses on the allegations it hopes to make in its proposed second amended complaint and the expert declaration it attached as an exhibit to that proposed complaint.  (*See, e.g.*, *id.* at 9 (asserting that the proposed second amended complaint "squarely addresses" the concerns the court raised in the April 24, 2025 order), 13 (asserting that the court should "examine the new allegations and evidence set forth in" the proposed second amended complaint because Meta argued that amendment would be futile), 14-27 (extensively citing Weple's expert declaration).)  Weple may not, however, attempt to amend its claims through its response to Meta's motion for judgment on the pleadings.  *See Riser v. Cent. Portfolio Control Inc.*, No. C21-5238LK, 2022 WL 2209648, at *4 n.1 (W.D. Wash. June 21, 2022) (so holding with respect to a motion to dismiss).  The court concludes that Weple's arguments relying on its proposed second amended complaint and expert declaration are not responsive to Meta's Rule 12(c) motion for judgment on the pleadings and instead are properly considered in the context of deciding Weple's motion to amend.

1      <u>3.</u>      <u>'591 Patent</u>

2          Having set forth the standard of review and the scope of review, the court

3  proceeds to consider Meta's Rule 12(c) motion for judgment on the pleadings on Weple's

4  claims for infringement of the '591 patent.

5          Weple alleges that Meta has infringed claims 1 and 11 of the '591 patent.  (Am.

6  Compl. ¶¶ 86-101.)  Representative claim 1[4] recites:

7          1. A method, comprising:

8          receiving, at one or more servers, a plurality of media messages from one or
                   more applications executable on a corresponding one or more
9                  computing devices, wherein respective ones of the plurality of media
                   messages are associated with expiration information to determine
10                 when the media message is no longer available for presentation;

           storing the plurality of media messages on the one or more servers;

11         selecting, for inclusion in a first feed, a first subset of the respective ones of
                   the media messages from among the plurality of media messages
12                 based on the expiration information of the respective ones of the
                   media messages, wherein each of the respective ones of the media
13                 messages of the first subset is associated with an advertisement
                   prompt;
14
           providing the first feed to a first mobile application executable on a first
15                 mobile device, the first mobile application configured to present the
                   first feed, wherein presentation of the first feed by the first mobile
16                 application includes presentation of a media message of the first
                   subset with the advertisement prompt associated with the media
17                 message of the first subset;

18         selecting, for inclusion in a second feed, a second subset of the respective
                   ones of the media messages from among the plurality of media
19                 messages based on the expiration information of the respective ones
                   of the media messages, wherein each of the respective ones of the
20                 media messages of the second subset is associated with an
                   advertisement prompt; and

21
_____
22      [4] Weple does not dispute Meta's assertion that claim 1 is representative for the purpose of
    the court's § 101 analysis.  (*See* MJOP at 4; *see generally* MJOP Resp.)

ORDER - 9

1

2

> providing the second feed to the first mobile application, the first mobile application configured to present the second feed, the second feed differing from the first feed, wherein presentation of the second feed by the first mobile application includes presentation of a media message of the second subset with the advertisement prompt associated with the media message of the second subset.

('591 patent, cl. 1.)

As Meta points out, the '591 patent's claims are "strikingly similar" to those of the '952 patent, which the court invalidated in its April 24, 2025 order. (*See* MJOP at 4 (citing 4/24/25 Order at 7-16); *compare* '591 patent, cl. 1; *with* '952 patent, cl. 1.) As a result, according to Meta, Weple's infringement claim must be dismissed because the '591 patent, like the '952 patent, cannot survive the *Alice* analysis. (*See* MJOP at 4-8.) The court agrees with Meta.

      *a.*     Alice *Step One*

First, under *Alice* step one, the court concludes that claim 1 of the '591 patent is directed to an unpatentable abstract idea. The '591 patent, like the '952 patent, is directed to "receiving, storing, scheduling, selecting, and presenting media content and advertisements." (*See* 4/24/25 Order at 9.) It does so using the following steps: (1) receiving content that has expiration information associated with it; (2) storing the content; (3) selecting a set of content and advertisements to display using the expiration information; (4) making the first set of content and advertisements available for display; (5) selecting a second set of content and advertisements using the expiration information; and (6) making the second set of content and advertisements available for display. (*See* '591 patent, cl. 1.) These steps do not purport to "improve the functioning of the

1    computer itself." *Enfish*, 822 F.3d at 1335.  Instead, the claim uses generic computer

2    components such as servers, computing devices, and mobile applications in their ordinary

3    capacity as tools to execute the steps.  *Id.* at 1135-36; *see also Mobile Acuity Ltd. v.*

4    *Blippar Ltd.*, 110 F.4th 1280, 1292-93 (Fed. Cir. 2024) ("As [the Federal Circuit has]

5    frequently held, claims reciting generalized steps of collecting, analyzing, and presenting

6    information, using nothing other than the conventional operations of generic computer

7    components, are directed to abstract ideas.") (compiling cases).  Furthermore, like claim

8    1 of the '952 patent, claim 1 of the '591 patent uses "result-based functional language"

9    but does not "describe how to achieve these results in a non-abstract way."  (*See* 4/24/25

10   Order at 9-10 (quoting *Two-Way Media*, 874 F.3d at 1337)); *Two-Way Media*, 874 F.3d

11   at 1337 (invalidating claim that required the "functional results of 'converting,' 'routing,'

12   'controlling,' 'monitoring,' and 'accumulating records,' but did not explain how to

13   achieve those results"); *AI Visualize, Inc. v. Nuance Commc'ns, Inc.*, 97 F.4th 1371, 1378

14   (Fed. Cir. 2024) ("We have explained that the steps of obtaining, manipulating, and

15   displaying data, particularly when claimed at a high level of generality, are abstract

16   concepts.").

17          Weple argues that the '591 patent is directed to the non-abstract idea of "a mobile

18   client-server architecture for dynamically generating distinct content feeds based on

19   expiration metadata and, when present, scheduled airtime information, and delivering

20   those feeds to a mobile application that can locally switch between them, with each feed

21   embedding interactive prompts for sharing and bookmarking that content."  (MJOP Resp.

22   at 16.)  This characterization departs from the one Weple offers in its amended complaint,

1    which asserts that the '591 and '952 patents "are directed to improved systems and

2    methods of managing and presenting media messages delivered within mobile application

3    feeds[.]"  (Am. Compl. ¶ 22; *see also id.* ¶ 6 (alleging that the Weple patents together

4    comprise "a comprehensive platform that facilitates the creation, management,

5    distribution, and monetization of diverse content in a mobile environment").)

6        In any event, at *Alice* step one, the court must focus on the language of the claim,

7    read in light of the specification.  *See TecSec, Inc.*, 978 F.3d at 1292.  Here, rather than

8    discuss technological improvements made possible by the '591 patent, the specification

9    describes a user interface for viewing and managing media content and advertisements

10   that is implemented using generic computer components.  (*See* '591 patent at 3:10-7:52;

11   *id.*, Figs. 10-14.)  Thus, "[t]he claims, at best, improve a user's experience while using a

12   computer application, which is not, without more, sufficient to render the claims directed

13   to an improvement in computer functionality.  *Mobile Acuity*, 110 F.4th at 1294 (citation

14   and quotation marks omitted); *cf. Enfish*, 822 F.3d at 1333, 1337 (finding patent survived

15   *Alice* step one where the specification itself described the technological benefits of the

16   invention and highlighted the differences between the invention and conventional

17   technology).  Because the representative claim of the '591 patent simply describes a

18   method and system to execute a conventional business practice—the selection and

19   display of timely content—it fails step one of the *Alice* analysis.

20        b.    Alice *Step Two*

21       Having found that the representative claim of the '591 patent is directed to an

22   abstract idea, the court moves to *Alice* step two and considers whether "the elements of

1    the claim both individually and as an ordered combination" include an "inventive

2    concept" sufficient to "transform the nature of the claim into a patent-eligible application

3    of the abstract idea." *Alice*, 573 U.S. at 217 (citations and internal quotation marks

4    omitted).  To survive step two, the claims must contain an inventive concept "sufficient

5    to ensure that the patent in practice amounts to significantly more than a patent upon the

6    ineligible concept itself." *Id.* at 218 (citations and internal quotation marks omitted).  As

7    the Supreme Court has noted, "wholly generic computer implementation is not generally

8    the sort of 'additional feature' that provides any practical assurance that the process is

9    more than a drafting effort designed to monopolize the abstract idea itself." *Alice*, 573

10    U.S. at 223-24 (citation and internal quotation marks omitted).

11       Here, as noted above, the steps outlined in representative claim 1 of the '591

12    patent, like claim 1 of the '952 patent, are achieved using generic computers, including

13    "servers," "computing devices," and "mobile applications."  ('591 patent, cl. 1.)  This is

14    the type of "wholly generic computer implementation" that fails step two of the *Alice*

15    inquiry.  *Alice*, 573 U.S. at 223; *see also Two-Way Media*, 874 F.3d at 1339 ("[M]erely

16    reciting an abstract idea performed on a set of generic computer components . . . would

17    not contain an inventive concept.").  And nothing in the specification provides support

18    for finding an inventive concept.  To the contrary, the specification simply describes a

19    "media coordination system"

20       which allows network connected devices, such as mobile devices **106** (cell
         phones, portable music players, tables, laptops, etc.), to coordinate times for
21       specific media messages/programs to be streamed to other application users
         (e.g., a feed of message posts or a stream of real-time media data).  Generally,
22       a computer server **102** (e.g., a processor, RAM, a hard drive, an operating

1    system, web serving software and database software) is connected to a wide
2    area network **104** such as the internet or wireless cell phone data network.
     Mobile devices **106** are also connected to the network **104**, allowing for
     communication to and from the server **102**.

('591 patent at 3:55-67 (citing *id.*, Fig. 1); *see also id.* at 4:1-7:52 (describing a mobile

application interface for managing media content).)  "Where, as here, the specification

'describes the components and features listed in the claims generically,' it "support[s] the

conclusion that the[] components and features are conventional" rather than inventive.

*Beteiro*, 104 F.4th at 1358 (quoting *Weisner v. Google LLC*, 51 F.4th 1073, 1083-84

(Fed. Cir. 2022)); *see Hawk Tech. Sys., LLC v. Castle Retail, LLC*, 60 F.4th 1349,

1358-59 (Fed. Cir. 2023) ("Simply stated, nothing in the claims, understood in light of

the specification, requires anything other than off-the-shelf, conventional computer,

network, and display technology for gathering, sending, and presenting the desired

information.") (citation omitted, cleaned up).

      Nor do the allegations in the amended complaint demonstrate an inventive concept

in the '591 patent.  Indeed, Weple includes its allegations regarding the '591 patent and

the invalidated '952 patent in the same paragraphs in its amended complaint.  (*See* Am.

Compl. ¶¶ 22-24 (discussing both patents).)  These allegations, like the shared

specification, speak to end-user features and efficiency rather than "improvement[s] in

the computer technology itself," *Aatrix*, 882 F.3d at 1127, and thus cannot satisfy step

two of the *Alice* analysis.

Accordingly, the court concludes that the representative claim of the '591 patent is directed to ineligible subject matter under 35 U.S.C. § 101 and dismisses Weple's claim for infringement of the '591 patent.

2.    '2,357 Patent

The '2,357 patent fares no better than the '591 patent.  Weple alleges that Meta has infringed claims 1, 9, 16, and 24 of the '2,357 patent.  (Am. Compl. ¶¶ 69-85.) Representative claim 1[5] recites:

1. A method, comprising:

receiving, at one or more servers, a plurality of media messages from one or more mobile applications executable on a corresponding one or more mobile devices;

storing the plurality of media messages on the one or more servers, wherein one or more stored media messages are associated with expiration information to determine when the one or more stored media messages can no longer be provided in a feed;

selecting, for inclusion in respective ones of a first feed and a second, corresponding ones of a first subset and a second subset of media messages from among the plurality of media messages stored on the one or more servers, wherein the respective selections of the first subset and the second subset of media messages are based at least in part on the expiration information, wherein the second feed differs from the first feed;

providing the first feed from the one or more servers to a mobile application executable on a mobile device, the mobile application configured to present the first feed, wherein presentation of the first feed by the mobile application includes presentation of a sharing prompt with a media message included in the first feed, wherein interaction with the sharing prompt via the mobile application facilitates generation of a link configured to enable access to the media message; and

providing the second feed from the one or more servers to the mobile application, the mobile application configured to present the second

_____

[5] Weple does not dispute Meta's assertion that claim 1 is representative.  (*See* MJOP at 8; *see generally* MJOP Resp.)

ORDER - 15

1    feed, wherein the mobile application is further configured to switch a
     presentation of the first feed to a presentation of the second feed in
2    response to a user interaction with the mobile application.

3    ('2,357 patent, cl. 1.)  As Meta points out, claim 1 of the '2,357 patent is "highly similar"

4    to claim 1 of the '356 patent, which the court invalidated in its April 24, 2025 order.

5    (MJOP at 8; *compare* '2,357 patent, cl. 1, *with* '356 patent, cl. 1.)  Thus, according to

6    Meta, Weple's claim must be dismissed because the '2,357 patent, like the '356 patent,

7    cannot survive the *Alice* analysis.  (*See* MJOP at 8-11.)  Because the '2,357 patent suffers

8    from the same deficiencies as the '591 patent, the court again agrees with Meta.

9        First, at *Alice* step one, claim 1 of the '2,357 patent is directed to an unpatentable

10   abstract idea.  Like claim 1 of the '356 patent, claim 1 of the '2,357 patent is directed

11   generally to "generating, receiving, storing, selecting, and distributing media content."

12   (*See* 4/24/25 Order at 18-19 (discussing the '356 patent); '2,357 patent, cl. 1.)  Rather

13   than setting forth "an improvement to computer functionality itself," claim 1 again uses

14   generic computer components such as servers, mobile applications, and mobile devices to

15   complete "tasks for which a computer is used in its ordinary capacity."  *Enfish*, 822 F.3d

16   at 1335-36.  And, again, claim 1 of the '2,357 patent, like claim 1 of the '356 patent, uses

17   "result-based functional language" but does not "describe how to achieve these results in

18   a non-abstract way."  (*See* '2,357 patent, cl. 1; '356 patent, cl. 1; 4/24/25 Order at 16-20

19   (invalidating the '356 patent).)  The court finds nothing in the representative claim of the

20   '2,357 patent that would lead it to conclude that it, unlike claim 1 of the '356 patent, is

21   directed to a non-abstract idea.

22

The '2,357 patent also does not survive *Alice* step two because it lacks an "inventive concept" sufficient to "transform the nature of the claim into a patent-eligible application" of the abstract idea. *Alice*, 573 U.S. at 217 (cleaned up). As noted, the '2,357 patent, like the '356 patent and the '591 patent, is implemented using generic computer components, and nothing in the patents' common specification provides support for finding an inventive concept. *See Customedia Techs., LLC v. Dish Network Corp.*, 951 F.3d 1359, 1366 (Fed. Cir. 2020) ("[T]he invocation of already-available computers that are not themselves plausibly asserted to be an advance . . . amounts to a recitation of what is well-understood, routine, and conventional.") (citation and quotation marks omitted). The amended complaint, too, does not disclose an inventive concept. Instead, Weple includes its allegations regarding the '2,357 patent and the invalidated '356 patent in the same paragraphs and again focuses on improvements to the end-user's experience rather than improvements to the underlying technology. (*See* Am. Compl. ¶¶ 25-26.) Accordingly, because the claims, read in light of the specification, do not reveal an inventive concept, the court concludes that the '2,357 patent is directed to ineligible subject matter under § 101 and grants Meta's motion for judgment on the pleadings on Weple's claims for infringement of the '2,357 patent.

### 3.    '1,357 Patent

Finally, Weple alleges that Meta has infringed claims 1, 8, 14, and 21 of the '1,357 patent. (Am. Compl. ¶¶ 118-133.) Representative claim 1[6] recites:

---

[6] Weple does not dispute Meta's assertion that claim 1 is representative. (*See* MJOP at 11; *see generally* MJOP Resp.)

ORDER - 17

1. A method, comprising:

receiving, at one or more servers, a plurality of media messages from one or more mobile applications executable on a corresponding one or more mobile devices;

storing the plurality of media messages on the one or more servers;

providing a first feed from the one or more servers to a mobile application executable on a mobile device, the first feed including a first subset of media messages selected from among the plurality of media messages stored on the one or more servers, the mobile application configured to present the first feed, wherein presentation of the first feed by the mobile application includes presentation of a comment prompt, a sharing prompt, and a bookmark prompt with a media message included in the first feed, wherein interaction with the comment prompt via the mobile application enables a comment to be associated with the media message, wherein interaction with the sharing prompt via the mobile application facilitates generation of a link configured to enable access to the media message, wherein interaction with the bookmark prompt via the mobile application enables the media message to be associated with another bookmarked media message through the mobile application; and

providing a second feed from the one or more servers to the mobile application, the second feed including a second subset of media messages selected from among, the plurality of media messages stored on the one or more servers, the second feed differing from the first feed, the mobile application configured to present the second feed, the mobile application configured to switch a presentation of the first feed to a presentation of the second feed in response to a user interaction with the mobile application.

('1,357 patent, cl. 1.)  Again, the court agrees with Meta that claim 1 of the '1,357 patent is directed to ineligible subject matter.  At *Alice* step one, claim 1 of the '1,357 patent, like claim 1 of the the '591 and '2,357 patents, is directed to an abstract idea related to receiving, storing, selecting, and presenting media content; uses result-based functional language; and does not explain how to achieve those results in a way that improves the function of the relevant technology.  *See Two-Way Media*, 874 F.3d at 1337.  And, at

1   *Alice* step two, the claims of the '1,357 patent again invoke only generic computer

2   components such as servers, mobile devices, and mobile applications, and neither the

3   shared specification nor the allegations in the amended complaint provide support for

4   finding an inventive concept that transforms the abstract idea into patentable subject

5   matter.  (*See, e.g.*, Am. Compl. ¶ 27 (alleging that the ''1,357 patent "discloses improved

6   systems and methids for enhancing user interaction with media messages placed in

7   mobile application feeds")).)  Thus, the court concludes that the '1,357 patent fails the

8   *Alice* test for patent eligibility and therefore grants Meta's motion to dismiss Weple's

9   claim for infringement of that patent.

10  **B.     Motion to Amend**

11          Having granted Meta's motion for judgment on the pleadings on Weple's claims

12  for infringement of the '591, '1,357, and '2,357 patents, the court must now determine

13  whether to grant Weple's motion for leave to amend.  Under Federal Rule of Civil

14  Procedure 15(a)(2), the court should "freely" grant leave to amend a pleading "when

15  justice so requires."  Fed. R. Civ. P. 15(a)(2).  In the Ninth Circuit, "[a]lthough leave to

16  amend should be given freely, a district court may dismiss without leave where a

17  plaintiff's proposed amendments would fail to cure the pleading deficiencies and

18  amendment would be futile."  *Sanderling Mgmt. Ltd. v. Snap Inc.*, 65 F.4th 698, 705

19  (Fed. Cir. 2023) (quoting *Cervantes v. Countrywide Home Loans, Inc.*, 656 F.3d 1034,

20  1041 (9th Cir. 2011)).

21          Here, Weple seeks to amend its allegations relating to the '591, '2,357, and '1,357

22  patents to address the deficiencies the court identified when applying step two of the

ORDER - 19

1   *Alice* patent eligibility test in its April 24, 2025 order.  (*See generally* MTA.)  Weple

2   asserts that its vastly expanded[7] proposed second amended complaint addresses the

3   court's conclusion at *Alice* step two that Weple relied on "conclusory" assertions in the

4   first amended complaint that failed to "address with specificity any improvement in the

5   computer technology itself."  (*See* MTA at 1 (citing 4/25/25 Order at 15-16).)

6   Underlying its motion to amend is Weple's assertion that a person of ordinary skill in the

7   art ("POSITA") "would recognize that the claimed architectures solve concrete technical

8   problems in mobile and distributed computing environments[.]"  (*Id.* at 1.)  To support

9   this assertion, Weple includes a 71-page declaration by its computer science expert as an

10   exhibit to the proposed second amended complaint.  (*See id.*; *see* Prop. 2d Am. Compl.

11   ¶ 6, Ex. G ("Koskinen Decl.").)  Weple also seeks to add allegations relating to a recent

12   decision by the United States Patent and Trademark Office ("USPTO") that "allow[ed]

13   claims similar in structure and scope" to those at issue in this case after its examiner

14   considered this court's April 24, 2025 order dismissing the '952, '730, and '356 patents.

15   (*See* MTA at 1; Prop. 2d Am. Compl. ¶¶ 86-90.)

16       The court denies Weple's motion to amend because the proposed amendments are

17   "wholly divorced" from and inconsistent with the language of the patents themselves and

18   thus cannot save Weple's infringement claims.  *See Int'l Bus. Machs.*, 50 F.4th at 1379

19

20   _____

21   [7] Weple's first amended complaint alleges infringement of six patents, is 31 pages long, and includes 134 paragraphs of allegations.  (*See generally* Am. Compl.)  In contrast, Weple's proposed second amended complaint includes claims for infringement of only the remaining

22   three patents, is 57 pages long, and includes 197 paragraphs of allegations.  (*See generally* Prop. 2d Am. Compl.)

*Secured Mail Sols.*, 873 F.3d at 913.  For example, relying heavily on its expert

declaration, Weple seeks to add the following allegation to its second amended

complaint:

> The inventions claimed in the '2357, '591, and '1357 patents provide specific improvements to the operation of computer systems and networks (such as the internet) for the distribution of digital content.  In particular, the inventions introduce architectural and processing innovations, such as expiration-based feed selection, client-side feed switching, persistent sharing prompt links, and bookmark-based media content associations, that address longstanding challenges in mobile content delivery.  These claimed features improve the functioning of computer systems by optimizing memory use, reducing server and network load, increasing responsiveness in real-time environments, and enhancing the operation of mobile applications.

(Prop. 2d Am Compl. ¶ 34  (citations to Koskinen declaration omitted).)  "No amendment

to a complaint[,]" however, "can alter what a patent itself states."  *Sanderling*, 65 F.4th at

706.  Here, neither the claims nor the shared specification of the patents at issue make

any mention of such purported innovations as "optimizing memory use, reducing server

and network load, [or] increasing responsiveness in real-time environments[.]"  (*See, e.g.*,

'591 patent at 1:40-7:52.)

 As a more extreme but still representative example, Paragraph 39 of the proposed

second amended complaint alleges, again relying heavily on Weple's expert's

declaration:

> Based on the claims, the specification, and their knowledge of the field, a POSITA would recognize that the claimed system relies on a distributed database to disseminate media messages to users around the world.  In a distributed database environment, where content is stored across geographically distributed servers to support low-latency access, this sever-side filtering mechanism based on these specific eligibility parameters allows the system to identify and exclude ineligible media messages. This improves server storage efficiency and system performance by avoiding the replication

ORDER - 21

1  of ineligible media across system servers. The use of expiration and
2  scheduling metadata for feed selection also improves computational
   efficiency by narrowing the pool of eligible media messages evaluated
3  during feed generation. By filtering out ineligible media messages early in
   the processing pipeline, the system reduces server CPU load and memory
4  consumption associated with further selection operations (such as ranking
   and personalizing tasks). This mechanism supports faster execution, enables
5  real-time feed generation at scale, and improves the predictability of system
   performance. Additionally, the use of both expiration and scheduled airtime
6  metadata establishes clear temporal boundaries on media message eligibility,
   which improves network efficiency by limiting selection and delivery only
7  to currently relevant items. Without these mechanisms, premature or
   outdated media may appear in feeds, prompting users to skip irrelevant
8  content and issued repeated content requests, resulting in unnecessary server
   responses and wasted mobile network bandwidth. By transmitting only
9  media messages that fall within their defined availability windows, the claim
   system reduces redundant client-server interactions, conserves bandwidth,
   and improves user-perceived system responsiveness.

10 (Prop. 2d Am. Compl. ¶ 39 (citations to Koskinen declaration omitted).) Again, neither

11 the claims of the '591, '2,357, and '1,357 patents, nor their specification read in light of

12 the claims, make any mention of improved performance, network or storage efficiency,

13 distributed databases, CPU or memory usage, or conserving bandwidth. (*See, e.g.*, '591

14 patent at 1:40-7:52.) To the contrary, as noted above, the shared specification discloses

15 only features implemented using generic technology that improve the end-user's

16 experience. Because Weple's second amended complaint and the expert declaration upon

17 which it relies make allegations inconsistent with the language of the patents, the court

18 need not to accept those allegations as true. *Athena Diagnostics, Inc. v. Mayo*

19 *Collaborative Servs., LLC*, 915 F.3d 743, 755 (Fed. Cir. 2019); *see also Mobile Acuity*,

20 110 F.4th at 1293 ("[I]t is the claims that must supply the non-abstract idea."); *Synopsys,*

21

22

ORDER - 22

*Inc. v. Mentor Graphics Corp.*, 839 F.3d 1138, 1149 (Fed. Cir. 2016) ("The § 101 inquiry must focus on the language of the [a]sserted [c]laims themselves.").

Finally, Weple asserts that its proposed amendments are not futile because a USPTO examiner approved its application for a related patent after reviewing the court's April 24, 2025 order finding the '730, '952, and '356 patents ineligible. (MTA at 3-4; *see* Prop. 2d Am. Compl. ¶¶ 86-90; *id.*, Ex. P.) Because patent eligibility under § 101 is an issue of law reviewed *de novo*, however, "courts are not required to defer to Patent Office determinations as to eligibility." *Sanderling*, 65 F.4th at 705 (citation omitted); *see also Beteiro*, 104 F.4th at 1359 ("[A] patent examiner's consideration of Section 101 issues does not in any way shield the patent's claims from Article III review for patent eligibility.") (quotation marks and citation omitted). Accordingly, the court concludes that further amendment of Weple's amended complaint would be futile, and denies Weple's motion to amend.

## IV.    CONCLUSION

For the foregoing reasons, the court GRANTS Meta's motion for judgment on the pleadings (Dkt. # 56) and DENIES Weple's motion to amend (Dkt. # 60). Weple's first amended complaint, and this action, are DISMISSED with prejudice.

Dated this 9th day of January, 2026.

JAMES L. ROBART
United States District Judge